IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MARK HANDY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 5:10-CV-271 (MTT) |
| TINA COOK, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

This matter is before the Court on pro se Plaintiff Mark Handy's Motion for Default Judgment and Sanctions (Doc. 29), Defendants City of Macon, Mike Burns, and Kenneth Scott Chapman's Motion for Summary Judgment (Doc. 31), and Defendants Tina Cook and Cooper Cook's Motion for Summary Judgment (Doc. 35). For the following reasons, the Motion for Default Judgment and Sanctions is **DENIED**, and both Motions for Summary Judgment are **GRANTED**.

### I. FACTUAL BACKGROUND

This action arises out of Plaintiff Mark Handy's arrest on December 12, 2006. The facts giving rise to the arrest relate to domestic issues between Handy and Defendant Tina Cook, his ex-wife. Handy and Tina were married in April 1993 and had a daughter, Janey Handy, on July 12, 1993. The couple separated after a year and a half of marriage, and were divorced in April 1996. Handy and Tina were granted joint custody of their daughter, and they were engaged in heated arguments over the years. In 1997, Handy was charged with simple battery for spitting on Tina.

The chain of events leading to Handy's December 12, 2006, arrest began on November 27, 2006, when Tina informed Handy that she and her husband, Defendant Cooper Cook, were moving to Florida and taking Janey with them. Handy informed Tina that moving Janey to Florida would violate their custody order. Their conversations became increasingly heated, and Tina informed Handy in a November 30, 2006, letter that she would "in no way tolerate your belligerent behavior toward me."[1] (Doc. 36, at 2).

On December 1, Handy called Tina and he admits that during that call he said, "I'm going to take you to court and I'm going to fuck you up." (Doc. 37, Mark Handy Dep. at 123). Handy also allegedly told Tina that he "would deal with her" and he "would kick her ass." Tina then gave Janey the telephone, and Handy told her that he would have Tina and Cooper arrested if they took her to Florida. Tina says she and Janey were "freaked out." (Doc. 36, Tina Cook Aff. at ¶ 6).

Later that day, Tina and Janey met with then-Officer Issac Cepeda of the Macon Police Department to report Handy's behavior over the previous week. Tina did not ask Cepeda to take a particular course of action. Based upon their facial expressions and intonation, Cepeda believed that they were fearful. On December 4, 2006, Cepeda applied for and obtained an arrest warrant for the offense of simple assault pursuant to the Family Violence Act, O.C.G.A. § 16-5-20. At that time, Handy already had one outstanding warrant for violation of probation in Bibb County, and one outstanding warrant for simple assault and harassing telephone calls in Cobb County against his brother.

---

[1] The letter is dated November 30, 2007, but this was in error.

On December 11, Handy filed a complaint with the Macon Police Department claiming Tina would violate their custody order by moving Janey to Florida. Handy spotted Tina that afternoon and confronted her about not being listed as a contact on Janey's school records and about Janey's poor grades. Tina told Handy that he had outstanding warrants and that he was going to jail. Handy drove off once Tina opened her mobile phone to call the police.

On December 12, Tina went to the Third Precinct of the Macon Police Department and spoke with Defendant Detective Kenneth Chapman about Handy.[2] Later that day, Cepeda and three or four other officers arrested Handy at his home for his outstanding warrants. Cepeda took Handy to the Third Precinct offices for the purpose, Handy claims, of seeing the "arresting officer." (Doc. 37, Mark Handy Dep. at 18). Handy became suspicious because he was not immediately taken to jail, but Cepeda and Chapman testified that it is common practice to take someone to the police precinct before they are taken to jail so the officer can complete the required paperwork.

Handy alleges the officers took him into an office, and Cepeda filled out paperwork while Chapman interrogated him about the situation with Tina. Handy claims Chapman did not read him his *Miranda* rights. Handy alleges Chapman called him a "woman hitter," and threatened to charge him with conspiracy to commit murder if he did not allow the Cooks to take Janey to Florida. Handy believed that Chapman knew too much about his dispute with Tina, and alleges that he knew "Detective Chapman was a close personal friend of Mrs. Cook's new husband, Cooper Cook." (Doc. 1, at 5). Handy's basis for connecting the two was a statement allegedly made by Cooper's

---

[2] Detective Chapman was Officer Chapman at that time.

friend, Chester Chapman, to Janey about his "crazy nephew."[3] (Doc. 37, Mark Handy Dep. at 51). Handy alleges that "[t]hroughout the interrogation, Detective Chapman often put his hand on his firearm in a menacing and threatening manner" (Doc. 1, at 6), but he testified that he was not sure whether his hand was on a gun or pepper spray (Doc. 37, Mark Handy Dep. at 97-99).

After Cepeda finished his paperwork, he transported Handy to the Bibb County Law Enforcement Center. Handy was released on bond for the Bibb County charges the following day. As a condition of his bond, Handy was not allowed to have contact with Tina or Janey. Handy was transported to Cobb County that day to answer to the simple assault and harassing telephone calls charges. Handy was released on bond for the Cobb County charges the following day. Tina claims that she did not know of Handy's arrests until over one year later.[4]

Eventually all charges against Handy were dropped. According to Handy, an aggravated assault charge was reduced to simple assault at the Bibb County bond hearing.[5] These charges were further reduced to telephone harassment against Tina, and then to telephone harassment against Janey. Handy's Cobb County charges were dropped on July 19, 2007, and the Bibb County probation violation turned out to be invalid. On October 22, 2007, all charges related to the December 2006 events were

---

[3] Handy used Intelius.com to link Chapman to Chester Chapman. Chapman says that he does not know of any relative named Chester Chapman. Even Handy says, "I mean, it's distant, but I mean, it showed it connects." (Doc. 37, Mark Handy Dep. at 52).

[4] Handy disputes this claim, but cites in opposition unrelated deposition testimony regarding whether he has ever made threats against Tina.

[5] Although there is evidence in the record that Handy was charged with aggravated assault in Bibb County (Doc. 43-1, at 11), the warrant for his arrest was for simple assault pursuant to the Family Violence Act (Doc. 31-2, at 1).

dismissed by the Bibb County Solicitor General's Office.  Handy believes that these charges were baseless, and part of a conspiracy to allow the Cooks to move Janey to Florida.

Handy filed this action against the Defendants for violations of his civil rights pursuant to 42 U.S.C. § 1983 (Counts I-IV); false arrest against the Cooks (Count V); malicious prosecution against the Cooks (Count VI); and bad faith (Count VII).[6]  Strangely, Handy chose not to name Cepeda as a party even though he alleges Cepeda was in the room during the Chapman interrogation.

Handy also filed a Motion for Default Judgment and Sanctions because the Cooks subpoenaed their own telephone records after the April 20, 2011, discovery deadline.  During discovery, both Handy and the Cooks attempted to obtain various telephone records.  This dispute arose after the Cooks' counsel contacted Handy on April 6, 2011, and asked if he still wanted Tina's telephone records from October to December 2006.  Handy replied "that will be fine."  (Doc. 42-2, at 2).  On April 15, 2011, the Cooks' counsel informed Handy that "Bellsouth is requiring a subpoena for the home telephone, so that *may* take some time, but hopefully it can go pretty quickly."  (Doc. 42-2, at 10) (emphasis in original).  Handy informed the Cooks' counsel that he also was having a difficult time procuring telephone records.

The Cooks' counsel received information from Cooper necessary to subpoena the home telephone records on May 23, 2011.  The Cooks' counsel received the subpoenaed documents on May 31, 2011, and emailed Handy to inform him that the

---

[6] Defendants John Does 1-10 have not been served, and thus are not parties to this action. Additionally, pro se litigants may not receive attorney's fees pursuant to O.C.G.A. § 13-6-11. *Demido v. Wilson*, 261 Ga. App. 165, 169, 582, S.E.2d 151, 155 (2003).  Therefore, summary judgment is granted on Count VII.

records would not be used in the Cooks' Motion for Summary Judgment. Handy states that the Cooks' should have filed a Motion to Compel to expedite the process, and that the telephone records only were from November 10, 2006, to December 9, 2006.

The Defendants separately filed motions for summary judgment on Handy's claims. The City of Macon, Chief of Police Mike Burns, and Chapman primarily argue that Handy has suffered no constitutional injury. Tina and Cooper also argue that there was no constitutional violation. They further argue that they are not "State actors," and thus cannot be held liable pursuant to § 1983. Finally, they argue Handy's state law claims for false arrest and malicious prosecution are meritless.

## II. DISCUSSION

### A. Handy's Motion for Default Judgment and Sanctions

Pursuant to Fed. R. Civ. P. 37(b)(2)(A), a court may issue sanctions for failing to obey a discovery order. The Federal Rules use permissive language, and thus sanctions are not automatic. Before dismissing an action pursuant to Fed. R. Civ. P. 37(b), the Court must first find that the failure to comply with the relevant order was willful or done in bad faith, and that lesser sanctions would not suffice. *Doye v. Calvin*, 378 Fed. Appx. 926, 928 (11th Cir. 2010). Dismissal of cases pursuant to Rule 37(b) is not favored. *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993).

Default judgment, or any sanction, for the Cooks' subpoena is clearly inappropriate. Based upon the Parties' email exchanges, it is clear that the Cooks' counsel acted properly. Indeed, the Cooks' counsel acted with Handy's consent. The subpoena was intended to procure records Handy also wanted. While the subpoena was served after the discovery deadline, Handy was aware on April 15 that a subpoena

"may take some time."[7] Finally, these documents were not used in the Cooks' Motion for Summary Judgment. Thus, the Court finds that default judgment, or any sanction, is inappropriate, and the motion is denied.

### B. Defendants' Motions for Summary Judgment

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224. The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." *Id.*

#### 1. Claims Against the City of Macon, Mike Burns, and Kenneth Chapman

Handy claims Chapman violated his Fourth, Fifth, and Fourteenth Amendment rights by conducting an unreasonable search and seizure, by violating his right to due process, by using excessive force during his arrest, and by falsely arresting him. Chapman claims there was no constitutional violation, or, in the alternative, he was entitled to qualified immunity.

---

[7] It is debatable whether a subpoena to obtain one's own telephone records even constitutes discovery.

Before determining whether qualified immunity shields a governmental actor, the Court must first determine whether a constitutional violation occurred. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "The existence of probable cause at the time of arrest … constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *U.S. v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). "[J]ust because a person validly arrested is later discovered to be innocent does not make the arrest 'unlawful' for Fourth Amendment purposes. To the contrary, it has long been settled that … the existence of probable cause … provides the authority for an arrest warrant to issue." *Rodriguez v. Ritchey*, 556 F.2d 1185, 1190-91 (5th Cir. 1977).

No constitutional violation occurred here. Most of Handy's grievances are against Cepeda, who Handy chose not to include in this action. Cepeda met with Tina and Janey on December 1, and he believed that they were fearful and concerned. Based upon his conversation with them, Cepeda had facts to warrant a reasonable belief that Handy had committed the crime of simple assault, and he requested a warrant for Handy's arrest. Significantly, Cepeda arrested Handy on December 12, drove him to the Third Precinct, and allegedly was present during the Chapman interrogation.

Despite Cepeda's significant involvement in his arrest, Handy points the blame at Chapman. Based upon what he heard on the way to the precinct, Handy incorrectly believed Chapman was the arresting officer. Of course, Cepeda was the arresting

officer.[8] Handy further suspected wrongdoing when he was taken to the Third Precinct, but Cepeda and Chapman testified that it is common practice to stop by a precinct and complete paperwork before taking someone to jail. Even if it was an improper procedure to stop by the Third Precinct, Handy must establish that the arbitrariness of the officers' actions "shocked the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). Here, Handy cannot make that showing because it is not unconscionable for a police officer to stop by a police precinct to complete paperwork on an individual in custody.

Further, no constitutional violation occurred at the Third Precinct. First, the "failure to give *Miranda* warnings would prevent use of statements in a criminal trial, but has no significance in an action against police officers for deprivation of a plaintiff's civil rights." *Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999). Second, there is no evidence linking Chapman to an alleged conspiracy with the Cooks. Handy was concerned Chapman knew too much about his domestic dispute with Tina, but Chapman was aware of the dispute because he spoke with Tina earlier that day. Handy claims that he knew Chapman was a close personal friend of Cooper. However, Chapman and Cooper are not close personal friends and the only evidence linking Chapman to Cooper's friend Chester Chapman is a distant connection allegedly discovered through a people-search engine. Even if this search were admissible, there is no evidence that Chapman knew a distant relative named Chester Chapman. Even if the alleged distant relationship were known to Chapman, there is no evidence that Chester Chapman asked then-Officer Chapman to help the Cooks.

---

[8] Handy later argues that Chapman did not have the authority to interrogate him because he was not the arresting officer. (Doc. 45-1, at 6). This statement adds more confusion as to why Cepeda was not made a party to this action.

Third, there is no evidence that Chapman used excessive force during his interrogation. To the contrary, when Chapman spoke to Handy at the Third Precinct, he did not use any force at all. Handy states that Chapman placed his hand on his gun, but Handy was not sure whether Chapman's hand was on a gun or pepper spray. Handy also claims that Chapman threatened to charge him with attempted murder if he did not allow Janey to go to Florida. Even if Handy was threatened, the Eleventh Circuit has held that when there was no physical abuse or improper inducements for a statement, police did not violate the suspect's due process rights even though interrogating officers threatened to charge the suspect with murder, threatened to lynch him, put words in his mouth, and told him he was headed for eternal damnation. *Wilcox v. Ford*, 813 F.2d 1140, 1146-49 (11th Cir. 1987). In short, there is a complete absence of evidence of any constitutional violation.

Because Chapman did not commit a constitutional violation, there is no need to discuss whether he is entitled to qualified immunity. Similarly, the City of Macon and Chief Burns cannot be held liable under any of the theories advanced by Handy because neither Cepeda nor Chapman committed a constitutional violation. Accordingly, summary judgment must be granted on Handy's claims against the City of Macon, Chief Mike Burns, and Kenneth Chapman.

### 2. Claims Against Tina Cook and Cooper Cook

As a threshold matter, the Court notes that the Plaintiff does not have any evidence linking Cooper to the December 2006 events. Cooper admits to being friends with Chester Chapman, but even if Chapman and Chester Chapman are somehow related, there is no evidence that Cooper asked Chester Chapmen to get his distant

relative involved. Thus, summary judgment must be granted on all claims against Cooper Cook.

Handy brings three claims against Tina: false arrest; malicious prosecution; and a § 1983 conspiracy claim.[9] Pursuant to O.C.G.A. § 51-7-1, an arrested party has a right of action for an "arrest under process of law, without probable cause, when made maliciously." "A malicious prosecution claim has six essential elements: (1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage." *Gibbs v. Loomis, Fargo, & Co.*, 259 Ga. App. 170, 173-74, 576 S.E.2d 589, 592 (2003). Because false arrest and malicious prosecution both require a lack of probable cause and malice, the Court only will focus on these prongs.

Handy cannot demonstrate a lack of probable cause because Tina had legitimate reasons to go to the police. For false arrest and malicious prosecution, a "[l]ack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused." O.C.G.A. § 51-7-3; O.C.G.A. § 51-7-43. Here, Tina stated that Handy's actions were "belligerent" in her November 30, 2006, letter. Handy admits telling Tina, "I'm going to take you to court and I'm going to fuck you up" on December 1, 2006. Tina and Janey spoke with Cepeda to report this incident. On December 11, Handy confronted Tina about not being listed as a contact on Janey's school records and about Janey's poor grades. Tina met with Chapman the following morning. Based upon her

---

[9] The Plaintiff raises a false imprisonment claim in his response to the Cooks' Motion for Summary Judgment, but he did not seek this relief in the Complaint. Accordingly, the Court will not consider this claim.

-11-

interactions with Handy, it is clear that Tina turned to the police out of fear, and that she had reason to be afraid. Thus, Handy cannot establish a lack of probable cause.

Further, Handy cannot establish that Tina acted with malice. For false arrest, "[m]alice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." O.C.G.A. § 51-7-2. For malicious prosecution, malice will be inferred from the total lack of probable cause. O.C.G.A. § 51-7-44. Malice may also be inferred "where the defendant makes a false statement to police for the purpose of achieving some personal goal, such as revenge or the collection of a debt." *Gooch v. Tudor*, 296 Ga. App. 414, 417, 674 S.E.2d 331, 335 (2009).

Here, Handy does not provide any evidence of malice. Malice cannot be inferred because, as stated above, Tina had probable cause to go to the police. Moreover, Tina did not encourage the police to arrest Handy, and she did not even know he had been arrested until over one year later. Finally, Tina's statements to the police were truthful. Not incidentally, Handy can hardly complain that Tina sought the help of the Macon Police Department when he also went to the police.

Because Handy cannot show a lack of probable cause and malice, summary judgment must be granted on his claims against Tina for false arrest and malicious prosecution.

For the Plaintiff to bring a § 1983 claim against Tina, he must prove that the conduct allegedly causing the deprivation of a federal right is fairly attributable to the State. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

> For a defendant's actions to be fairly attributable to the state, "[f]irst, the deprivation must be caused by the exercise of some right or privilege

> created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor."

*Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992) (quoting *Lugar*, 457 U.S. at 937)). Private parties are State actors for § 1983 purposes "only in rare circumstances." *Harvey*, 949 F.2d at 1130. For Tina to be deemed a State actor, one of the following conditions must be met:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). "To charge a private party with State action under [the nexus/joint action test], the governmental body and private party must be intertwined in a "symbiotic relationship." … [T]he symbiotic relationship must involve the specific conduct of which the plaintiff complains." *Id.* at 1348 (citations omitted).

Because Handy cannot prove that the Macon Police Department coerced or significantly encouraged the allegedly unconstitutional action, or that Tina performed a traditionally public function, he must rely upon the nexus/joint action test. Here, Handy has failed to demonstrate a symbiotic relationship between Tina and the Macon Police Department. The only known connection between Tina and the Macon Police Department is that she met with officers on December 1, 2006, and December 12, 2006, to report threatening behavior. Merely reporting to the police is not a rare circumstance, and certainly is insufficient to establish a symbiotic relationship. If this

were the case, every person who reported to the police, including Handy, would be deemed a State actor. Thus, Handy has failed to prove that Tina is a State actor for § 1983 purposes.

Even if Handy could establish that Tina is a State actor, as mentioned above, he cannot establish that a constitutional violation occurred. Thus, summary judgment must be granted on Handy's § 1983 claims against Tina.

Accordingly, summary judgment must be granted on all claims against Tina Cook and Cooper Cook.

### III. CONCLUSION

For the foregoing reasons, the Motion for Default Judgment and Sanctions is **DENIED**, and both Motions for Summary Judgment are **GRANTED**.

SO ORDERED, this the 4th day of August, 2011.

                                            S/ Marc T. Treadwell
                                            MARC T. TREADWELL, JUDGE
                                            UNITED STATES DISTRICT COURT